IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MORGAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 3:12cv816-MHT |
| | ) | (WO) |
| SAEHAESUNG ALABAMA, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

<u>CORRECTED OPINION AND ORDER</u>

Relying on Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a & 2000e through 2000e-17), plaintiff Michael Morgan claims that defendant Saehaesung Alabama, Inc. illegally fired him from his position as production manager because he is not of Korean national origin.  Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

This case is now before the court on the company's motion for summary judgment. For the reasons described below, the motion will be denied.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

Saehaesung Alabama is the local subsidiary of a Korean-owned automotive parts manufacturer.  Morgan was hired to serve as a production manager in the company's Lafayette, Alabama plant.  In that role, he was responsible for overseeing shift supervisors and hourly

2

staff; maintaining sufficient quantities and quality of production; and producing company reports on production levels and issues.  He was one of two non-Korean managers in the plant, the other being Human Resources Manager Barry Moody.

Morgan worked long hours and believed that he was doing a good job.  However, in his first few months on the job, he grew to view Dong Jung Kim, the plant manager (who spoke very limited English), as having an aggressive and ineffective management style.  He expressed this criticism of company management in an email, dated November 12, 2011, to Jin Heo, the daughter of the company's owner:

> "HEY,JIN I spoke to you yesterday on the problems with Mr.KIM. WE need to address, those problems that going own at the plant, the employees want to discuss this with you as well, in a meeting, they are very upset with all the things are going own at the plant, like i told you yesterday, if we don't take action, we going have to face some legal problems down the road, this is what i trying to prevent for i company, MR.KIM, don't realize all what he is

3

doing, and the problems he causing at the plant, America culture is totally different than the KOREN, culture, he must realize that, and there is laws in America we must abide by where he likes it or not, he can coast the company a lot of money, if he not careful, in his actions toward the employees,i trying to prevent this from happenings, but i need your support, and Mr.Bae, in this matter, I look forward to seeing you soon, as well as Mr.bae to help resolve this problem we having at our plant. thanks Michael and all ways have a blessed day.

Morgan Email, Def.'s Ex. 4 to Morgan Dep. (Doc. No 20-1) at 63 (spelling and grammar as in original).

Morgan was fired on December 6, 2011, less than three months after he had been hired. He had received no negative feedback on his work before his termination. The decision was made in a meeting in which no non-Korean staff was present. The plant manager instructed Human Resources Manager Moody to tell Morgan that he was fired and to deal with the paperwork. As summarized by Morgan, Moody told him:

4

(1) "[I]t looks like they are going to all Korean management." Morgan Dep., Def.'s Ex. A (Doc. No. 20-1) at 127:14-15; see also id at 135:8-9 ("he told me, said, they are going to a Korean management"); Morgan Dec., Pl's Ex. 5 (Doc. No. 26-5) ¶ 2 ("[Moody told me] that they wanted an all-Korean Management staff").

(2) "[T]hat Korean management had talked and that the owner had decided he didn't want an American manager at the plant. Mr. Moody told me that the owner wanted a Korean production manager at the facility and that the Koreans wanted all Korean management." Equal Employment Opportunity Commission Charge, Def.'s Ex. E (Doc. No. 20-5).

Moody now denies making these statements, and there is no other evidence of the statements.

After Morgan was terminated, a Korean manager from the shipping department began to sit at his desk, but there is no evidence that the manager took over his duties.  The company advertised for his position on the Opelika Career Center website, but has not filled it. Some of the job duties have been taken on by the non-Korean shift supervisors, and some have been taken on by a person who goes by "Charles," who also translates for the plant manager.  There is not evidence in the record as to Charles's legal name or job title.

## III. DISCUSSION

### A.

Title VII bars an employer from discharging an employee "because of race, color, ... or national origin."  42 U.S.C. 2000e-2(a)(1).

6

Because Human Resources Manager Moody's alleged statements regarding discriminatory reasons behind Morgan's termination are a central aspect of Morgan's case, the court must determine the admissibility of the statements. At this summary-judgment stage as stated above, the court must credit Morgan's testimony that Moody actually made the statements. However, the court "may consider only that evidence which can be reduced to an admissible form." Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005). Therefore, the court must determine whether Moody's statements were hearsay, and, if so, whether they fall within a hearsay exception. Hearsay is a statement which is made outside of court which is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).

Morgan argues that the court should consider Moody's statements as non-hearsay under subpart (d)(2)(D) of Fed. R. Evid 801, which states that a statement offered by an opposing party is not hearsay if it "was made by the

7

party's agent or employee on a matter within the scope of that relationship and while it existed." In <u>Kidd v. Mando Am. Corp.</u>, 731 F.3d 1196 (11th Cir. 2013), the Court of Appeals for the Eleventh Circuit recently clarified how courts should examine such statements in Title VII cases. There, the plaintiff claimed that she was denied a promotion because she was not Korean and testified that a human resources manager named had told her that management "refused to even consider an American candidate" for the job she was seeking. <u>Id</u>. at 1207. The manager denied making the statement, and the trial court refused to admit evidence of the statement as hearsay. The <u>Kidd</u> court clarified that there are two ways that such an employee's statement could be admissible evidence against his employer. First, the statement could be admissible as within the scope of his employment if he had "some kind of participation in the <u>employment decision or policy</u> of the employer." <u>Kidd</u>, 731 F.3d at 1209 (quoting <u>Rowell</u>, 443 F.3d at 800) (emphasis added).

Alternatively, an employee's statement is admissible if he is repeating a statement from the decisionmakers and the employee's statement is independently admissible. 731 F.3d at 1207-08.  Because the <u>Kidd</u> court found that the trial court had not adequately assessed whether the manager's statement could be admissible on one of these two grounds, it reversed and remanded the case for further factual development. <u>Id</u>. at 1210. On remand, the statement was again excluded. <u>Kidd v. Mando Am. Corp.</u>, 2013 WL 6772979 (M.D. Ala. Dec. 20, 2013) (Albritton, J.) (appeal pending).

Morgan cannot admit Moody's statements under the first <u>Kidd</u> basis.  The <u>Kidd</u> court drew a contrast: on the one hand, there is an individual who participates in the employment decision in a "narrow" or "ministerial" way, in which case the remark is not admissible; and, on the other hand, there is an individual whose participation "amounted to something more" (even if that additional participation is merely consultation about the decision),

9

in which case the remark may be admissible. <u>Kidd,</u> 731 F.3d at 1210 (citing <u>Simple v. Walgreen Co.,</u> 511 F.3d 668, 672 (7th Cir. 2007)).   Morgan admits that Moody played a substantive role in his discharge only after the decision was made to fire him.   Opp. Br. at 18 ("Kim instructed [Moody] to fire Plaintiff and told him the reasons for the decision."); Morgan Dep. at 128:23-129:2 (Moody "had to drop the axe on me because that's what they told him to do. That's the only reason he had to do it."); <u>see also</u> Moody Dep. 55:4-56:18 (describing Moody's non-involvement in the decision to terminate Morgan). Since Morgan's termination was a <u>fait accompli</u> by the time Moody became involved, his opinions cannot be attributed to the decisionmaking body.

However, Moody's statements could be admissible as a repetition of a decisionmaker's statements.   Especially as characterized in Morgan's sworn discrimination charge to the Equal Employment Opportunity Commission, Moody's alleged statements could be viewed as a repetition of

statements from Kim or other Korean managers: "[Moody] told me that Korean management had talked and that the owner had decided he didn't want an American manager at the plant. Mr. Moody told me that the owner wanted a Korean production manager at the facility and that the Koreans wanted all Korean management". Equal Employment Opportunity Commission Charge, Def.'s Ex. E (Doc. No. 20-5).

"Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Therefore, the court must identify an exception or exclusion for Kim's statements that the reasons for Morgan's termination were that he did not want an American manager <u>and</u> for Morgan's repetition of those statements. The court agrees with Morgan that, under subpart (d)(2)(D) of Rule 801, Kim's alleged statements could be admissible. The court could find at trial that

11

he played a role in the decisionmaking process that led to Morgan's termination.

The next step is for Morgan to identify a separate ground for admissibility of Moody's repetition of Kim's statements.  Morgan presents subpart (d)(2)(D) of Rule 801 again.  He argues that, because hiring and firing employees was within the scope of Moody's employment, his repetition of Kim's statements fell within that scope of employment and should be admissible.  However, the <u>Kidd</u> court refused to include automatically such repetitions by a member of the human resources department within Rule 801's subpart (d)(2)(D) exclusion from hearsay:

> "To be sure, we do not suggest that if [plaintiff] were able to prove that this statement was based on an observation [the manager] made or something he was told by the ... decisionmakers that it would automatically be admissible as an admission by a party opponent. [Plantiff] would still have to identify an additional exception to the rule against hearsay because it is [the manager]'s--rather than the ... decisionmakers'--statement itself that has to be admissible."

731 F.3d at 1208 n.15.

However, Moody's repetition could be admissible pursuant to subpart (d)(2)(C) of Fed. R. Evid. 801, which excludes from hearsay a statement "made by a person whom the party authorized to make a statement on the subject." In <u>Collins v. Wayne Corp.</u>, 621 F.2d 777 (5th Cir. 1980), the former Fifth Circuit Court of Appeals ruled that statements by an expert hired by a bus company to investigate an accident should be admitted under subpart (d)(2)(C) because he was authorized to make statements about the causes of the accident.   <u>Id</u>. at 782.[*] Similarly, in <u>B-W Acceptance Corp. v. Porter</u>, 568 F.2d 1179 (5th Cir. 1978), the same court held that subpart (d)(2)(C) applies to an employee's testimony in a previous proceeding when the employee had been authorized

---

[*]The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981, and all Former Fifth Circuit Unit B and non-unit decisions rendered after October 1,1981. <u>See</u> <u>Stein v. Reynolds Secur., Inc.</u>, 667 F.2d 33, 34 (11th Cir. 1982); <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

by his employer to testify about certain matters. <u>Id</u>. at 1183.

In this case, the evidence could support the conclusion that Plant Manager Kim specifically instructed Human Resources Manager Moody to talk to Morgan about his termination, including why he was being fired.  According to Moody, "[Kim] told me that I needed to get with Michael Morgan, that they were going to go in a new direction, and that his employment--I was to let him know that his employment would be ending with Saehaesung."  Moody Dep. at 56:13-18.  Although this testimony is ambiguous, it could be read to indicate that Kim instructed Moody to inform Morgan both of the fact of his termination and of the reasons for his termination. Since the court could conclude that Moody was authorized by Kim to speak to Morgan about why he was being fired, Moody's statements could be admissible under subpart (d)(2)(C) of Rule 801.

Since the court could find that Kim's statements and Moody's repetition of them are not hearsay under subparts (d)(2)(D) and (d)(2)(C) of Rule 801, respectively, the court will consider them on summary judgment. <u>See</u> Fed. R. Civ. P. 56(c)(2); advisory committee note to 2010 amendments. The next question is whether Kim's statements, along with all other evidence in this case, are sufficient to support a claim of race or national-origin discrimination such that the claim should go to a jury.

### B.

Title VII expressly states that it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Under the 1991 amendments to this Act, "an unlawful employment practice is established

15

when the complaining party demonstrates that race, color,... or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e-2(m).  In addition, the 1991 amendments provide that, "On a claim in which an individual proves a violation ... and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) ...; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C.A. § 2000e-5(g)(2)(B).  "Thus, under these amendments, if the employee shows merely that [an impermissible factor] was a motivating factor, he has established liability and thus may be entitled to some

16

relief.  Whether the employer has met its 'same action' burden of proof would go to the nature of the relief available." Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1165 (11th Cir.2003).

In considering a claim of discrimination at trial, therefore, the court must go through a two-step assessment.  In the first step, the court must determine whether the employee has proved by a preponderance of the evidence that his race or national origin was a motivating factor for the employer's decision, even though other factors also motivated the employer.  If the employee has shown this fact by a preponderance of the evidence, then liability is established and the court must go to step two of the process.  At step two, the court must determine whether the employer has proved by a preponderance of the evidence that it would have taken the same adverse-employment action against the employee even in the absence of the impermissible factor.  See also Desert Palace, Inc. v. Costa, 539 U.S. 90, 101

(2003) (in order to obtain a mixed-motive jury
instruction under Title VII, 42 U.S.C.A. § 2000e-2(m), "a
plaintiff need only present sufficient evidence for a
reasonable jury to conclude by a preponderance of the
evidence, that 'race, color, ... or national origin' was
a motivating factor for any employment practice"). Here,
the court concludes that the evidence is sufficient to go
to a jury to undertake this two-step process.

On the one hand, the evidence supports a conclusion
that company management fired Morgan because of his
hubris, as displayed in the email he wrote to the company
owner's daughter about how the company could be run
better.  Management could well have viewed the comments
in the email, not as constructive criticism, but as
uncalled-for arrogance, and in particular from someone
whose command of the written English language is far from
perfect.  The evidence thus supports a conclusion that
Saehaesung fired Morgan for entirely legitimate reasons,

18

or at least would have terminated Morgan absent race or national-origin bias.

However, the evidence also supports a conclusion that the plant management wanted to get rid of Morgan because he was not Korean.   This conclusion is supported by evidence that: in his email, Morgan was not only critical of the company and Plant Manager Kim, he appeared to base that criticism on the difference he perceived between American and Korean 'cultures'; this criticism came from a non-Korean; this email was sent to the company owner's daughter; and his discharge came approximately three weeks after the email.  Because Morgan's discharge came in the wake of his criticism of perceived cultural differences between American workers and Kim, there is sufficient evidence for a jury to find that race or national origin was, at least, in play at time of his discharge is a reasonable inference.  But, also, there are Human Resources Manager Moody's statements, which together suggest that Kim, the person Morgan singled out

19

for criticism, stated that he "wanted a Korean production manager, "wanted all Korean management," and "didn't want an American manager."  Thus, the evidence could support the conclusion that Morgan's race or national origin was not only 'a motivating' factor, it was the only factor.

Whether the first conclusion (no discrimination) or the second (discrimination) is correct cannot be resolved on summary judgment.  Rather, the evidence is sufficient to go to trial.

* * *

Accordingly, it is ORDERED that defendant Saehaesung Alabama, Inc.'s motion for summary judgment (doc. no. 18) is denied.

DONE, this the 25th day of March, 2014.


　　　/s/ Myron H. Thompson　　
UNITED STATES DISTRICT JUDGE